IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SHELLYE WRIGHT, Individually and in her capacity as heir of and representative of the Estate of RODNEY WRIGHT,<br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>TEXAS DEPARTMENT OF CRIMINAL JUSTICE, TEXAS TECH UNIVERSITY HEALTH SCIENCE CENTER, Warden EDDIE WILLIAMS, Officer JONES, Officer EMIL PACHECEK, and ALAN PICKERING, in their individual capacities.<br>　　　　　　　　　　Defendants. | Civil Action No.:<br>7:13-cv-116 |

**PLAINTIFF'S COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Shellye Wright, individually and in her capacity as heir of the Estate of Rodney Wright, files this lawsuit against the Texas Department of Criminal Justice, Texas Tech University Health Science Center, Eddie Williams, Alan Pickering, Officer Jones, and Officer Emil Pachecek, seeking redress for the preventable suicide death of her beloved son, and would show the following:

**I.
PARTIES**

1.　　Plaintiff Shellye Wright is the natural mother of the decedent, Rodney Wright, and resides in Ft. Worth, Texas.

2.　　No administration of Mr. Wright's estate is currently pending and none is necessary.

Accordingly, Ms. Wright has standing to assert a wrongful death claim in her individual capacity and a survival claim in her capacity as heir of the Estate of Rodney Wright. *See* Texas Civil Practices and Remedies Code §§71.002 et. seq and 71.021.

3. Defendant Jones, whose first name is not yet known, was a correctional officer at the Allred Unit in Wichita County, Texas at all relevant times, and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ. He is sued in his individual capacity for punitive and compensatory damages. He can be served with process at 2101 FM 369 North, Iowa Park, TX 76367. He was working with Emil Pachecek the day Rodney Wright committed suicide.

4. Defendant Emil Pachecek was a correctional officer at the Allred Unit in Wichita County, Texas at all relevant times, and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ. He is sued in his individual capacity for punitive and compensatory damages. He can be served with process at 2102 Burnett Street, Rear, Wichita Falls, TX 76301.

5. Defendant Alan Pickering was a correctional sergeant at the Allred Unit in Wichita County, Texas at all relevant times, and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ. He was responsible for supervising and training the correctional officers assigned to his shift, including Jones and Pachecek. He is sued in his individual capacity for punitive and compensatory damages. He can be served with process at 2101 FM 369 North, Iowa Park, TX 76367.

6. Defendant Eddie Williams was the Warden at the Allred Unit in Wichita County, Texas at all relevant times, and acting under color of law and as the agent, and, as a matter of law, the

official representative of TDCJ. He was responsible for supervising all programs and activities at the prison, including the training and conduct of Pickering, Jones and Pachecek. He is sued in his individual capacity for punitive and compensatory damages. He can be served with process at 2101 FM 369 North, Iowa Park, TX 76367.

7. Defendant Texas Department of Criminal Justice is the state prison system, an agency of the State of Texas. At all relevant times, it operated the Allred Unit, a public facility with programs and services for which Mr. Wright was otherwise qualified. TDCJ is a recipient of federal funds. TDCJ is sued for compensatory relief under federal law. It can be served process by serving Brad Livingston, its executive director, at 861-B, IH-45 North, Huntsville, TX 77320.

8. Defendant Texas Tech University Health Science Center, located in Lubbock, is a component of the Texas Tech University system. TTUHSC's high-ranking policymakers reside and work in Lubbock. Through its Correctional Managed Care program, TTUHSC partners with TDCJ to provide health care to 20 percent of TDCJ prisoners, including prisoners at the Allred Unit. TTUHSC is a recipient of federal funds, and is sued for compensatory relief under federal law. It can be served process by serving its president, Dr. Tedd Mitchell, at Ted Mitchell, M.D., Office of the President, TTUHSC Building, 3601 4th Street, Lubbock, TX 79430.

## II.
## JURISDICTION AND VENUE

9. As this case is brought pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. §12131 et seq., and Rehabilitation Act, 29 U.S.C. §794, this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3). Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

10. This Court has general personal jurisdiction over the Defendants as they reside and/or

work in the Northern District of Texas.

11.     This Court has specific *in personam* jurisdiction over defendants because this cause arises out of conduct that caused the death of Rodney Wright while he was in the custody of the Allred Unit in Wichita County, which is within the Northern District of Texas.

12.     Venue for this cause is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Wichita County, which is within the Northern District of Texas.

## III.
## FACTUAL BACKGROUND

13.     TDCJ housed Rodney Wright at the Allred Unit on September 23, 2011, the day he committed suicide after Officers Pachecek and Jones ignored his calls for help.

14.     Mr. Wright was known by all of the defendants to suffer from severe schizophrenia and bipolar disorder. These serious conditions impaired the function of his brain, and limited his ability to think, interact with others, concentrate, work, live, care for himself, and function on a day to day basis.

15.     Mr. Wright frequently talked to himself and, beginning as a teenager, heard voices telling him to harm himself. These serious auditory hallucinations made him believe things would be better if he died. For example, he frequently heard Satan telling him to hurt himself, and suffered visual hallucinations of angels and demons telling him to take his own life. These serious hallucinations impaired his ability to concentrate, work, live and care for himself.

16.     Notably, Mr. Wright had attempted suicide in the past while in TDCJ custody. In 2010, he cut his own throat at the Allred Unit, requiring 43 sutures to close. TTUHSC doctors reported he was "<u>high risk <suicide> status</u>" (emphasis in original). Though he most often lived at the

Allred Unit during his incarceration, he spent months in each of TDCJ's inpatient psychiatric facilities.

17.     In fact, shortly before his death, TTUHSC had discharged him from its inpatient psychiatric facility, the Montford Unit in Lubbock.

18.     Even after his discharge from the Montford Unit, Mr. Wright continued to threaten self-harm. On multiple occasions before his death he was placed in an observation cell at the Allred Unit and put on suicide watch.

19.     When Mr. Wright returned to the Allred Unit after being discharged from the Montford Unit, he was assigned to a single cell, even after TTUHSC and TDCJ placed him on suicide watch on multiple occasions. Housing prisoners with known suicidal tendencies by themselves is dangerous, as people are less likely to take their own lives when there are other people around them. Suicide attempts are frequently impulsive, and can be stopped by the presence of another person – even a cellmate. Nonetheless, TDCJ denied Mr. Wright this eminently reasonable accommodation that could have saved his life.

20.     Likewise, TDCJ housed Mr. Wright in a cell with numerous "tie off points" a ligature could be hung from – such as the ceiling grate he hung his bedsheet from. Though TDCJ knew Mr. Wright had attempted suicide in the past, and knew he could use architectural features of his cell to complete a suicide, TDCJ took no action to house him safely.

21.     Similarly, TTUHSC knew Mr. Wright had a long history of suicide attempts, but took no action to protect him at the Allred Unit. For example, TTUHSC could have instructed TDCJ to house Mr. Wright with other people, or in a safe cell without tie-off points. But TTUHSC denied him this reasonable accommodation for his serious mental illness.

22.  At the Allred Unit, TTUHSC doctors prescribed Mr. Wright injectable psychotropic drugs to ensure he remained properly medicated. But just two days before his death, he missed an appointment to receive his required injection. Instead of following up to ensure he received his medication, TTUHSC did nothing.

23.  On September 23, 2011, reeling from the lack of medication, Mr. Wright informed Defendants Pachecek and Jones that he was suicidal and needed immediate help. Pachecek was counting the prisoners by going from cell to cell, while Jones observed from the control picket.

24.  Specifically, Mr. Wright told Pachecek and Jones "I need to go to psyche, or I'm gonna hang myself!"

25.  Numerous witnesses saw and heard Mr. Wright's desperate request for help.

26.  Rather than accommodate his simple request to see a psychiatrist, or indeed to help him in any manner, Defendant Pachecek told Mr. Wright to "Go ahead and kill yourself, I don't give a fuck. You'll do everyone a favor."

27.  Shockingly, instead of helping him, Pachecek even threatened to write him a disciplinary case if Mr. Wright did not go back to his cell. Pachecek then callously walked away, leaving Mr. Wright alone in his cell, though it would have been easy for Pachecek to summon medical help or otherwise refer Mr. Wright to the TTUHSC staff working at the Allred Unit.

28.  Defendants Jones also heard this exchange from the control picket, but also did nothing to help Mr. Wright.

29.  Other prisoners who heard Mr. Wright's plea for help were extremely concerned, and told Jones he needed to immediately check on Mr. Wright. But Jones ignored them, providing the critical delay where Mr. Wright hung himself.

30. As Jones and Pachecek ignored Mr. Wright's plea for help, he was left by himself in a dangerously suicidal state. Tying his bedsheet through the ceiling grate in his cell, he fashioned a noose, and, sadly, took his own life.

31. Jones performed the next count of the prisoners, approximately 30 minutes after he and Pachecek ignored Mr. Wright's plea for help. Jones found Mr. Wright hanging from a bedsheet tied to the ceiling grate in the cell.

32. Rather than immediately enter the cell to cut the ligature, Jones called for his supervisor, Pickering, to come rescue Mr. Wright. Though Jones knew any delay could be fatal, he deliberately left Mr. Wright hanging in his cell to wait for Pickering to arrive.

33. Pickering finally showed up with a TTUHSC nurse, and cut Mr. Wright down.

34. By this time, Mr. Wright had no pulse. The TTUHSC nurse used the infirmary's automatic defibrillator to attempt to shock his heart back into a rhythm. But the defibrillator had not been properly maintained, and could not deliver a shock. If not for TTUHSC's and/or TDCJ's negligence in maintaining this critical tangible personal property, Mr. Wright's life could have been saved. When EMS arrived, they used the ambulance's defibrillator, but by then it was too late.

35. Sgt. Pickering was directly responsible for training and supervising Pachecek and Jones. He failed to adequately train them that every suicide threat must be taken seriously in order to accommodate people with serious mental illnesses, like Mr. Wright.

36. Likewise, Pickering and Williams specifically knew Pachecek was a poor correctional officer, who frequently argued with prisoners and failed to take their important complaints seriously. Even after Mr. Wright died, Pachecek was indifferent and callous, saying "that's one

more psyche patient we don't have to deal with."

37. Unfortunately, Mr. Wright was not the first inmate to take his own life at the Allred Unit. In 2008, one man killed himself, while 58 others attempted suicide. In 2009, four men killed themselves at Allred, and 48 others attempted suicide. In the years leading to Mr. Wright's death, Allred consistently had a higher attempted and completed suicide rate than other similar Texas prisons. Despite knowing his prison was especially dangerous for inmates with serious mental illnesses, Warden Williams took no action to improve training and supervision of the officers responsible for protecting the lives of suicidal prisoners.

38. Williams knew prisoners with serious mental illnesses, like Mr. Wright, were incarcerated in his prison. And he knew these prisoners were taking their own lives at an alarming rate. But he took no additional action to protect their lives.

39. Throughout his incarceration, Ms. Wright supported and continued to love her son. She regularly sent him money to spend in the commissary, spoke to him by telephone, visited him, and frequently called his doctors to check on his progress. His tragic death sent her into a deep depression, causing her terrible heartache and emotional distress. He was just 36 years old.

## IV. CAUSES OF ACTION

**A. 42 U.S.C. § 1983 Deliberate Indifference Claims Against Defendants Pachecek, Jones, Pickering and Williams.**

40. Plaintiff incorporates by reference all of the foregoing and further alleges as follows:

41. Mr. Wright had a clearly established right to be protected from his suicidal tendencies and not to have his serious medical needs treated with deliberate indifference. Rather than provide Mr. Wright the medical care and treatment he desperately needed, and was known to need by Defendants Pachecek and Jones, they each deliberately disregarded his condition, left

him to die, and – in fact – told him to kill himself.

42.     Likewise, Defendants Pickering and Williams knew prisoners like Mr. Wright were vulnerable to suicide at the Allred Unit. They knew officers, like Pachecek and Jones, were poorly trained, and, as a result, that inmates were committing suicide with alarming frequency at the prison. Despite this, they took no action to supervise known problem-officers, like Pachecek, and no action to provide additional, necessary training about the seriousness of suicide threats.

43.     As a direct and proximate consequence, Defendants Pachecek, Jones, Pickering and Williams are liable under 42 U.S.C. § 1983 for violations of Mr. Wright's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

**B.      Americans with Disabilities Act and Rehabilitation Act Against Defendants TDCJ and TTUHSC.**

44.     TDCJ and TTUHSC were, at all relevant times, recipients of federal funds, and thus covered by the mandate of the Rehabilitation Act.  The Rehabilitation Act requires recipients of federal monies to reasonably accommodate persons with mental disabilities in their facilities, program activities, and services and reasonably modify such facilities, services and programs to accomplish this purpose.  29 U.S.C. § 794.

45.     Further, Title II of the ADA applies to TDCJ and TTUHSC and has the same mandate as the Rehabilitation Act.  42 U.S.C. § 12131 *et seq*.

46.     The Allred Unit is a facility, and its operation comprises a program and service, for Rehabilitation Act and ADA purposes.

47.     For purposes of the ADA and Rehabilitation Act, Mr. Wright was a qualified individual regarded as having a mental impairment that substantially limited one or more of his major life activities.  Defendants TDCJ and TTUHSC knew Mr. Wright: was being treated with psychiatric

medications; experienced hallucinations in the prison, including supernatural powers instructing him to end his own life; suffered from psychiatric problems; had previously made serious suicide attempts; and made multiple threats to end his own life during the time he was incarcerated at the Allred Unit.

48.  Despite this knowledge, TDCJ's officers intentionally discriminated against him, under the meaning of the ADA and Rehabilitation Act, by failing and refusing to provide him psychiatric care when he threatened to kill himself, placing him in a one-man cell, and housing him in a cell dangerous to people at risk of self-harm.

49.  Likewise, TTUHSC's employees failed to accommodate his disability by ensuring he received his psychiatric medication injections as prescribed, and failing to require TDCJ to house him in a cell appropriate for someone with his well-known history of suicide attempts.

50.  Thus, as alleged above, TDCJ and TTUHSC failed and refused to reasonably accommodate Mr. Wright's mental disability while in custody, in violation of the ADA and Rehabilitation Act. That failure and refusal caused his death.

51.  TDCJ and TTUHSC failed, and refused to reasonably modify its facilities, services, and programs to reasonably accommodate Mr. Wright's mental disability, including failing to house him in a safe cell, failing to provide psychiatric care or place him on a suicide watch when he threatened to kill himself.

52.  Mr. Wright died as a direct result of TDCJ and TTUHSC's intentional discrimination against him. Plaintiff is entitled to the maximum amount of compensatory damages allowed by law.

## IV.
## DAMAGES

53.     The actions and omissions of Defendants deprived Plaintiff of his civil rights under the United States Constitution and the ADA/Rehabilitation Act.  Moreover, Defendants' acts and omissions proximately caused Mr. Wright's death and Plaintiff's damages.  Accordingly, Plaintiff asserts claims for compensatory damages under 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act, as well as the wrongful death and survivorship statutes.

54.     Likewise, because Pachecek, Jones, Pickerling and Williams' conduct was egregious, Plaintiff asserts claims for punitive damages against them.

55.     More particularly, Plaintiff in her capacity as heir of the Estate of Rodney Wright, asserts a survival claim on behalf of the estate. The Estate has incurred damages including, but not limited to, the following:

- conscious pain and suffering; and
- funeral and burial expenses.

56.     Plaintiff, in her individual capacity, asserts a wrongful death claim. She has incurred damages including, but not limited to, the following:

- past and future mental anguish; and
- past and future loss of companionship, society, services, and affection with her son.

## VIII.
## JURY DEMAND

57.     Plaintiff respectfully demands a jury trial on all factual issues in dispute.

## IX.
## PRAYER FOR RELIEF

58. Plaintiff hereby asks that Defendants be cited to appear and answer and that Plaintiff be awarded judgment against Defendants for:

(a) compensatory damages against all Defendants;

(b) punitive damages against Defendants Pachecek, Jones, Pickerling and Williams, in their individual capacities;

(c) attorneys' fees and costs, including but not limited to expert fees, under 42 U.S.C. §1988;

(d) pre-judgment interest and post-judgment interest at the highest rate allowable under the law;

(e) all other costs; and

(f) all other relief in equity or in law, to which Plaintiff may be entitled.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 E. 11th Street
Austin, Texas 78702
    Tel.   512-623-7727
    Fax.   512-623-7729

By: /s/ Jeff Edwards
    JEFF EDWARDS
    State Bar No. 24014406

**ATTORNEYS FOR PLAINTIFF**