IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **SHELLYE WRIGHT, individually and in her Capacity as heir and Representative of the Estate of RODNEY WRIGHT,** § § § § § § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 7:13-cv-0116-O | |
| § | | |
| **TEXAS DEPARTMENT OF CRIMINAL JUSTICE, et al.,** § § § § | | |
| Defendants. § § | | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit brought under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, against Defendants Texas Department of Criminal Justice ("TDCJ"), various TDCJ correctional employees and officers, and Texas Tech University Health Sciences Center ("TTUHSC"), Plaintiff Shellye Wright, individually and in her capacity as the representative of the estate of her son Rodney Wright ("Wright"), alleges that Wright took his own life while incarcerated in the Allred Unit in Iowa Park, Texas, as a result of Defendants' failure to provide him with constitutionally required medical care and failure to properly accommodate his mental health disability. Defendant TTUHSC has moved to dismiss the complaint for failure to state a claim. *See* Texas Tech University Health Sciences Center's Motion to Dismiss Under FRCP 12(b)(6) (ECF No.

1

18). Having considered the motion, response,[1] pleadings and the applicable law, the Court grants the motion in part and denies the motion in part.

**I.      Background Facts and Procedural History**[2]

Plaintiff is the mother of Wright, who took his own life on September 23, 2011 by hanging himself from the ceiling grate in his single-inmate cell while he was incarcerated in the Allred Unit in Iowa Park, Texas. Plaintiff alleges that TTUHSC, the entity which provides medical care at the Allred Unit through its Correctional Managed Care program and instructs TDCJ how to safely house prisoners with disabilities, failed to accommodate Wright's mental disability by not requiring TDCJ to assign Wright to a shared cell, despite knowing Wright suffered from severe bipolar disorder and schizophrenia, was classified by TTUHSC doctors as "high risk suicide status," and had made serious suicide attempts in the past, including cutting his own throat at the Allred Unit requiring 43 sutures in 2010. *See generally* Pl. Compl. ¶¶ 8, 14-16, 19-22, 24, 26, 30, 37. Plaintiff further alleges that it is well known that "housing prisoners with known suicidal tendencies by themselves is dangerous, as people are less likely to take their own lives when there are other people around them." *Id.* ¶ 19. Plaintiff also alleges that TTUHSC failed to ensure Wright was not imprisoned in a cell with "tie off points" from which a ligature could be secured, "such as the ceiling grate he hung his bedsheet from." *Id.* ¶ 20. Finally, Plaintiff alleges that two days before his death, Wright missed an appointment to receive injectable psychotropic drugs necessary to treat his mental illness and "[i]nstead of following up to ensure he received his medication, TTUHSC did nothing." *Id.* ¶ 22.

---

[1]Movant did not file a reply.

[2]In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

On September 19, 2013, Plaintiff sued TDCJ and various correctional officers for alleged constitutional violations under 42 U.S.C. § 1983 seeking compensatory and punitive damages. Plaintiff also sued TTUHSC under the ADA and Rehabilitation Act seeking compensatory relief. TTUHSC moves to dismiss the ADA and Rehabilitation Act claims for failure to state a claim.

## II.   Legal Standard

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).  The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.  When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief.  *Id.*  However, the Court does "not accept as true conclusory allegations, unwarranted factual

inferences, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Likewise, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*

**III.   Analysis**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). A "program or activity" includes "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . ." 29 U.S.C. § 794(b)(1)(A). Congress intended that Title II of the ADA "work in the same manner as Section 504," *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (internal quotation marks and citation omitted), and jurisprudence interpreting either statute is generally

4

applicable to both. *See id.* To prove a claim under Title II of the ADA or § 504 of the Rehabilitation Act, Plaintiffs must adequately allege that Wright (1) was a qualified individual with a disability, and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of the Allred Unit, or was otherwise subjected to discrimination, (3) because of his disability. *See id.*

TTUHSC does not dispute that Wright was a qualified individual with a disability. Instead, TTUHSC argues that Plaintiff has "not plead any *facts* to claim to support the elements of a cause of action under the ADA or Rehabilitation Act," specifically that he "was either excluded from participation in or denied benefits of a public entity's services, programs or activities, or otherwise discriminated against by the public entity; and [] such exclusion, denial of benefits, or discrimination *was by reason of his disability*." Def. Mot. at 3 (original emphasis). In opposition to the motion to dismiss, Plaintiff cites case law in support of her ADA and Rehabilitation Act claims, argues that "TTUHSC's interpretation of the statute essentially makes the ADA and Rehabilitation Act meaningless[,]" and states:

> Denying Wright safe housing is no different than denying wheelchairs or crutches to inmates with mobility impairments. Without wheelchairs or crutches, inmates with mobility disabilities cannot safely move about the prison and are at risk of injury. Without a cell mate, or a cell free from dangerous tie-off points, prisoners whose mental illnesses put them at severe risk of suicide are placed in much greater risk of death.

Pl. Resp. at 8.

Confinement in a jail or prison is a program or service for ADA/Rehabilitation Act purposes. *See generally Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998). Disability discrimination "differs from discrimination in the constitutional sense" because the ADA and Rehabilitation Act

5

have their own definitions of discrimination. *Melton v. DART*, 391 F.3d 669, 672 (5th Cir. 2004). Discrimination under the ADA and Rehabilitation Act may include a defendant's failure to make reasonable accommodations to the needs of a disabled person. *See id.* (under Title II of the ADA "public entities generally are required . . . to make reasonable modifications to avoid discrimination on the basis of disability"); *see also Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination); *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation or denial of the benefits of the prison's services, programs or activities.") (internal quotation marks, brackets, ellipses, and citation omitted); *Lee v. Valdez,* 2009 WL 1406244, at * 12 (N.D. Tex. May 20, 2009) (Fitzwater, C.J.) (recognizing cause of action under Title II and Rehabilitation Act where paranoid schizophrenic plaintiff inmate alleged "she was denied reasonable accommodations for her serious mental disabilities to allow her to access health care in the Dallas Jail."); *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003) (discussing claims of discrimination based on failure to make a "reasonable accommodation"); *McCoy v. Tex. Dep't Crim. Justice*, 2006 WL 2331055, at *7 and n.6 (S.D. Tex. Aug. 9, 2006) (internal citations omitted) ("In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.")

Under this body of case law, and based on the motion, response and pleadings, the Court finds that Plaintiff has adequately alleged a claim under the ADA and Rehabilitation Act insofar as Plaintiff alleges that TTUHSC discriminated against him by not requiring a shared cell and a cell without "tie-off points," as the pleadings are sufficient to provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. Specifically, Plaintiff alleges TTUHSC provides medical care to the Allred Unit, and one of its critical functions is to instruct TDCJ how to safely house prisoners with disabilities. Compl. ¶¶ 8, 19, 21. Although TTUHSC states in its motion that it "does not make housing assignments" (*see* Mot. to Dis. at 2), at this juncture the Court must accept all well-pleaded facts as true and view them in the light most favorable to Plaintiff. *See Sonnier*, 509 F.3d at 675. Plaintiff has sufficiently alleged that TTUHSC, through its Correctional Managed Care program, partners with TDCJ and "could have instructed TDCJ to house Mr. Wright with other people, or in a safe cell without tie-off points[,] [b]ut TTUHSC denied him this reasonable accommodation for his serious mental illness." *Id.* ¶ 21.

Plaintiff alleges that TTUHSC failed to require Wright to have a roommate and a cell free of dangerous tie-offs, though well-aware that he was a threat to himself and had been designated by TTUHSC doctors as a an inmate with a "high risk suicide status." *Id.* ¶¶ 15-16. Plaintiff alleges that TTUHSC's and TDCJ's failure and refusal to reasonably accommodate Wright's mental disability by placing him in a cell appropriate for someone with his well-known history of suicide attempts, violated the ADA and Rehabilitation Act resulting in his death. *Id.* ¶¶ 48-50. Further, Plaintiff alleges that Wright died as a direct result of TDCJ and TTUHSC's intentional discrimination against him based on his mental disability. Compl. ¶ 52.

In sum, the Court concludes that Plaintiff has stated a *prima facie* case that TTUHSC violated the ADA and Rehabilitation Act. Plaintiff has adequately alleged that Wright (1) was a qualified individual with a disability, and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of the Allred Unit, or was otherwise subjected to discrimination, (3) because of his disability. *See Melton*, 391 F.3d at 671-72 (setting forth elements of *prima facie* case). Failure by TTUHSC to instruct TDCJ to provide reasonable accommodation in the prison context, specifically a shared cell and a cell free from "tie-off points," knowing of Plaintiff's mental disability and his prior suicide attempts, states a claim under Title II and the Rehabilitation Act as it "may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy*, 2006 WL 2331055, at *7 (citing *United States v. Georgia*, 546 U.S. at 151); cf. Resp. at 6 ("TTUHSC disregarded Wright's disabilities by failing to provide him safe housing [it] knew was necessary to protect him from his suicidal impulses caused by his disabilities[,]" ultimately leading to his suicide, and he "undoubtedly suffer[ed] more pain and punishment than other able-bodied prisoners at the Allred Unit."). *See generally Tennessee v. Lane*, 541 U.S. at 533 (ADA and Rehabilitation Act create an "affirmative obligation" for public entities to provide "reasonable accommodations" for people with disabilities). Plaintiffs also adequately allege that the discrimination was intentional (*see* Compl. ¶ 52), and that is well known that "housing prisoners with known suicidal tendencies by themselves is dangerous, as people are less likely to take their own lives when there are other people around them." *Id.* ¶ 19.

Further, to the extent TTUHSC contends that Plaintiff may have failed to allege facts stating what accommodations the inmate sought for his disability, the Court concludes that any alleged

8

failure to request an accommodation is not fatal to Plaintiff's claim where a defendant had knowledge of an individual's disability and needs but took no action. *See generally Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (noting that the disabled individual's burden to request an accommodation applies [w]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent."). Plaintiff has alleged that TTUHSC knew Wright suffered from severe bipolar disorder and schizophrenia, was classified by TTUHSC doctors as "high risk suicide status," and had made serious suicide attempts in the past, including cutting his own throat at the Allred Unit requiring 43 sutures in 2010. *See* Compl. ¶¶ 14, 16-18, 21. Plaintiff also alleged that is well known that "housing prisoners with known suicidal tendencies by themselves is dangerous, as people are less likely to take their own lives when there are other people around them." *Id.* ¶ 19. Moreover, to the extent that Wright may have been required to request an accommodation but did not, this is a matter for summary judgment, not a matter to be decided at the pleading stage.

With regard to Plaintiff's ADA and Rehabilitation Act claims that are based on allegations that TTUHSC failed to ensure that Wright took his psychotropic medications, however, the Court concludes that Plaintiff has failed to state a *prima facie* case for violation of the ADA and Rehabilitation Act. As TTUHSC correctly argues, "Plaintiff does not plead that Wright was denied his medication, or that his housing prevented him from accessing the medication, or that he was otherwise denied medication by reason of disability." *See* Def. Mot. at 3. Accordingly, the Court will grant TTUHSC's motion in this regard.

## IV.     Conclusion

Based on the foregoing, the Court **grants in part and denies in part** Texas Tech University Health Sciences Center's Motion to Dismiss Under FRCP 12(b)(6) (ECF No. 18). The Court **grants** the motion insofar as Plaintiff's ADA and Rehabilitation Act claims are based on allegations that TTUHSC failed to ensure that Wright took his psychotropic medications, and dismisses these claims with prejudice. The Court **denies** the motion insofar as Plaintiff's ADA and Rehabilitation Act claims are based on allegations that TTUHSC failed to require that Wright not be placed in single-person cell at the Allred Unit and not be placed in a cell with "tie-off points."

**SO ORDERED** on this **16th day** of **December, 2013**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**